IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
FAYETTEVILLE DIVISION

BUDDY SMITH                                                                                       PLAINTIFF

v.                                        CIVIL NO. 06-5210

MICHAEL J. ASTRUE, Commissioner
Social Security Administration                                                        DEFENDANT

## MAGISTRATE JUDGE'S REPORT AND RECOMMENDATION

Plaintiff Buddy Smith brings this action pursuant to 42 U.S.C. § 405(g), seeking judicial review of a decision of the Commissioner of the Social Security Administration (Commissioner) denying his claims for period of disability and disability insurance benefits (DIB) and supplemental security income (SSI) benefits under the provisions of Titles II and XVI of the Social Security Act (Act).

**Procedural Background:**

The applications for DIB and SSI presently before this court were protectively filed on November 17, 2003, alleging an inability to work since September 17, 1997, due to right temporoparietal cerebral vascular accident (CVA) versus reversible ischemic neurological deficit, renal insufficiency unknown etiology, possible acute prostatitis, alcohol abuse, seizures and/or syncopal episode and history of illegal drug use. (Tr. 43, 322). For DIB purposes, plaintiff's date last insured is December 31, 2001. An administrative hearing was held on December 7, 2005. (Tr. 367-405). Plaintiff was present and represented by counsel.

By written decision dated March 7, 2006, the ALJ found that prior to plaintiff's date last insured plaintiff did not have a severe impairment. (Tr. 9G).

The ALJ determined as of November 17, 2003, the date of plaintiff's application for SSI benefits, plaintiff did have the following severe impairment: renal calculi with chronic renal insufficiency. (Tr. 9I). After reviewing all of the evidence presented, he determined that plaintiff's impairments do not meet or equal the level of severity of any impairment listed in the Listing of Impairments found in Appendix I, Subpart P, Regulation No. 4. (Tr. 9I). The ALJ found plaintiff retained the residual functional capacity (RFC) to lift and/or carry fifty pounds occasionally, twenty-five pounds occasionally; to push and/or pull the same amount; to sit for a total of six hours in an eight-hour workday; and to stand and/or walk a total of six hours in an eight-hour workday. (Tr. 9J). The ALJ, with the use of the Medical-Vocational Guidelines (Grids), found plaintiff was not disabled. (Tr. 9I).

Plaintiff appealed the decision of the ALJ to the Appeals Council. Plaintiff's request for review of the hearing decision by the Appeals Council was denied on September 28, 2006. (Tr. 3-7). When the Appeals Council declined review, the ALJ's decision became the final action of the Commissioner. Plaintiff now seeks judicial review of that decision. (Doc. #1). Both parties were afforded the opportunity to file appeal briefs; however, only defendant chose to do so. (Doc. # 8). This case is before the undersigned pursuant to the consent of the parties.

**Evidence Presented:**

An Administrative hearing was held on December 7, 2005. (Tr. 367-405). Plaintiff testified he was forty-one years of age and obtained a seventh grade education. (Tr. 369-370).

Plaintiff's past relevant work consists of work as a mason, a laborer, a forklift operator and a janitor. (Tr. 370, 372, 374).

The pertinent medical evidence in this case reflects the following. On September 17, 1997, plaintiff was admitted into the Navapache Regional Medical Center after experiencing left-sided weakness and a left-sided facial droop. (Tr. 96-128). Plaintiff reported no previous problems. Dr. Lawrence Coss noted plaintiff's usual alcohol consumption ended thirty-six hours prior to admission and that plaintiff had spent most of that time in bed. Plaintiff's brother reported plaintiff was not experiencing left-sided weakness when he helped him to bed after his last binge on Tequila. Plaintiff reported that he drinks six to twelve beers a day and smokes marijuana. Plaintiff was admitted for further evaluation and treatment of a right CVA with left upper and lower extremity weakness, slurred speech and slowed response. (Tr. 99). Plaintiff was also noted to have a slight increase in his blood pressure. Dr. Coss noted by the second day in the hospital plaintiff was ambulatory without a walker, had no facial droop or slurred speech and had rapid response to questioning. (Tr. 100). Plaintiff was noted to lift slightly to the left when walking. Plaintiff was discharged on September 20, 1997, with a diagnoses of right temporoparietal CVA versus reversible ischemic neurologic deficit, renal insufficiency of unknown etiology, possible acute prostatitis and alcohol abuse. Plaintiff was instructed to refrain from heavy exertion or heat exposure but encouraged to exercise. Plaintiff was instructed to return for a follow-up in one week.

Plaintiff was admitted into Saint Mary's Hospital on July 22, 1999, after experiencing a seizure or syncope episode. (Tr. 293-319). Plaintiff experienced some cardiac dysrhythmia while in the hospital but this stabilized by July 24th. Plaintiff was discharged on July 25, 1999,

on Dilantin. Plaintiff was advised to refrain from driving and smoking. Plaintiff was instructed to take one aspirin a day and was to call if he had another syncopal or near syncopal episode. Plaintiff was also continued on Levaquin for a urinary tract infection.

In a letter dated October 28, 2003, Dr. Michael R. Wilson, wrote he first saw plaintiff after plaintiff presented to the emergency room with left-sided flank pain. (Tr. 158). Dr. Wilson noted plaintiff previously had been asymptomatic and had no history of prior urologic disease. Dr. Wilson noted plaintiff's left kidney was very dilated and showed a 12-15 cm stone. Plaintiff's right kidney was noted to have poor drainage. Dr. Wilson indicated plaintiff was undergoing a nuclear renal scan and ultrasound to evaluate the function and anatomy of the kidneys. Dr. Wilson further noted plaintiff's report of a neck fracture from a motor vehicle accident and a possible stroke in 1998 after a drinking spell. Plaintiff reported he drank less than a six-pack of beer per week in October of 2003 and that he worked as a mason.

In a progress notes dated November 4, 2003, Dr. Wilson reported that eight-five percent of the kidney function was from plaintiff's left kidney which was full of staghorn calculus. (Tr. 155-157). Testing revealed only fifteen percent of plaintiff's kidney function was performed by his right kidney. Dr. Wilson noted there was no evidence of obstructive uropathy noted. Dr. Wilson indicated plaintiff was to report to Dr. Udaya Kumar on November 12, 2003.

Plaintiff present to Dr. Udaya Kumar on November 12, 2003. (Tr. 221-236). Dr. Kumar noted plaintiff had chronic renal insufficiency with a very large staghorn calculus in the left kidney. Dr. Kumar noted the calculus and renal insufficiency were discovered about a month ago. Afer examining plaintiff and test results, Dr. Kumar discussed the surgical option with plaintiff. (Tr. 236). Dr. Kumar noted that with the procedure plaintiff's renal function would

likely worsen so Dr. Kumar was going to obtain an opinion from a nephrologist prior to proceeding.

In a letter dated December 3, 2003, Dr. Jayant Kumar stated she saw plaintiff in the renal clinic where he had been referred due to his elevated creatine. (Tr. 215). After evaluating plaintiff, Dr. Jayant Kumar recommended plaintiff undergo further testing, avoid eating red meat and salt, drink plenty of fluids and return one month after the work-up.

Dr. Udaya Kumar reviewed plaintiff's CT scan on December 3, 2003, and noted plaintiff had been seen by a nephrologist. (Tr. 210). Dr. Kumar noted plaintiff's scan showed bilateral hydronephrosis with grossly thinned renal cortices. Dr. Kumar also noted plaintiff had bilateral UPJ obstructions that might be the cause of plaintiff's renal calculi. Dr. Kumar indicated plaintiff agreed to undergo an open nephrolithotomy and a pyeloplasty on his left kidney. Dr. Kumar indicated he would also be placing a ureteral stent.

On December 5, 2003, plaintiff was admitted into the University Hospital of Arkansas to undergo a left open nephrolithotomy for stone removal and a formal left repair of his pyeloplasty. (Tr. 141-148, 204-208, 237-252). Dr. Udaya Kumar noted plaintiff did well postoperatively. Plaintiff was discharged home on December 13, 2003, in stable condition on Macrodantin and Percocet. Plaintiff was to follow-up with Dr. Wilson for staple removal in four to five days. Plaintiff was to follow-up with Dr. Kumar in one month to undergo a nephrogram and to possibly remove the right stent. (Tr. 142).

Progress notes dated December 19, 2003, report plaintiff underwent an open anatrophic nephrolithotomy and was in for staple removal. (Tr. 154). Dr. Wilson noted plaintiff was feeling

well in general and had good energy. Dr. Wilson noted plaintiff's nephrostomy tube had a little bit of drainage. Dr. Wilson removed the staples and gave plaintiff wound care instructions.

In progress notes dated January 7, 2004, Dr. Udaya Kumar noted he performed a nephrostogram that showed sluggish flow of contrast from the kidney to the bladder. (Tr. 175). Dr. Kumar noted he also removed plaintiff's nephrostomy tube. Dr. Kumar indicated plaintiff's left ureteral stent would be removed in three weeks. Dr. Kumar further indicated that plans would be made to repair plaintiff's right UPJ obstruction.

An x-ray of plaintiff's abdomen dated January 28, 2004, revealed interval placement of bilateral ureteral stents. (Tr.150). A marked decrease in staghorn calculus over the left kidney was noted. Some persistent calcification overlying the left kidney was opined to represent calcifications within a dilated intrarenal collecting system. On this same date, Dr. Udaya Kumar noted plaintiff agreed to undergo a laparoscopic pyeloplasty vs open pyeloplasty. (Tr. 174).

On February 24, 2004, plaintiff was admitted into the University Hospital of Arkansas due to chronic renal failure with a massive stone in the left kidney. (Tr. 129-140,178-198). Plaintiff underwent a right open pyeloplasty and ureteral stent exchange on February 24, 2004. (Tr. 131). After this procedure plaintiff was observed to have difficulty breathing so a bronchoscopy was performed. (Tr. 165-172, 199-201). After ten days of hospital stay, plaintiff was discharged on March 3, 2004, to his home with medications consisting of Percocet for pain and Tequin. Plaintiff was to return to a urologist in three days for staple removal and to Dr. Kumar in three weeks for stent removal and KUB. (Tr. 130).

Progress notes dated March 9, 2004, indicate plaintiff was in for staple removal after his right-sided pyeloplasty. (Tr. 154). Dr. Wilson noted plaintiff had been doing well and that his

incision was healing nicely. Dr. Wilson noted that plaintiff's urinalysis was packed with white blood cells and would be sent for culture. He noted plaintiff was on antibiotics.

A radionuclide renal scan dated May 28, 2004, indicated no significant morphologic difference in the appearance of the kidneys, with the left larger than the right, compared to a previous exam. (Tr. 153, 345). Some pelvocaliectasis was noted on the left. A small amount of activity appeared present in the bladder. There was split renal function with seventy-seven percent on the left and twenty-three percent on the right. There was delayed exertion bilaterally.

Progress notes dated June 9, 2004, report plaintiff was experiencing some dysuria but denied fever or pain. (Tr. 160, 351). Dr. Udaya Kumar reported that he reviewed the renal scan performed on May 28, 2004. Dr. Kumar noted plaintiff showed a delayed excretion bilaterally which was consistent with chronic renal failure. Dr. Kumar noted plaintiff needed to stay on antibiotic prophylaxis. Dr. Kumar reported that he carried out a fluoroscopic examination of plaintiff's kidneys and did not see any significant calcifications suggestive of calculi. Dr. Kumar encouraged plaintiff to drink plenty of fluids and to return in six months.

Treatment notes dated June 14, 2004, report plaintiff's culture came back contaminated. (Tr. 279). Plaintiff was called and he reported he was asymptomatic and doing well. Notes indicate plaintiff was taking Cipro. He was instructed to take a sample to his primary care physician.

On December 8, 2004, plaintiff underwent kidney, ureter and bladder testing to assess for stones. (Tr. 281-288). Plaintiff reported experiencing occasional right flank pain. (Tr. 276). Studies of the abdomen revealed interval removal of ureteral stents; considerable fragmentation

of some of these calculi was observed and although more numerous the residual calcifications were smaller than previously noted; and no calcification were noted on the right. (Tr. 284).

Progress notes dated June 8, 2005, report plaintiff had been doing well since undergoing anatrophic nephrolithotomy two to three years ago. (Tr. 263, 268). Plaintiff reported he was taking Tylenol. (Tr. 267). Dr. Udaya Kumar noted plaintiff's renal function had remained stable post operatively and that plaintiff remained asymptomatic. Dr. Kumar noted that a KUB x-ray showed some stone in the lower pole of the left kidney but this had not significantly changed or increased since the last visit. Dr. Kumar instructed plaintiff to return in six months for a follow-up.

**Applicable Law:**

This court's role is to determine whether the Commissioner's findings are supported by substantial evidence on the record as a whole. *Ramirez v. Barnhart*, 292 F.3d 576, 583 (8th Cir. 2002). Substantial evidence is less than a preponderance but it is enough that a reasonable mind would find it adequate to support the Commissioner's decision. The ALJ's decision must be affirmed if the record contains substantial evidence to support it. *Edwards v. Barnhart*, 314 F.3d 964, 966 (8th Cir. 2003). As long as there is substantial evidence in the record that supports the Commissioner's decision, the court may not reverse it simply because substantial evidence exists in the record that would have supported a contrary outcome, or because the court would have decided the case differently. *Haley v. Massanari*, 258 F.3d 742, 747 (8th Cir. 2001). In other words, if after reviewing the record it is possible to draw two inconsistent positions from the evidence and one of those positions represents the findings of the ALJ, the decision of the ALJ must be affirmed. *Young v. Apfel*, 221 F.3d 1065, 1068 (8th Cir. 2000).

It is well-established that a claimant for Social Security disability benefits has the burden of proving his disability by establishing a physical or mental disability that has lasted at least one year and that prevents him from engaging in any substantial gainful activity. *Pearsall v. Massanari*, 274 F.3d 1211, 1217 (8th Cir.2001); *see also* 42 U.S.C. § § 423(d)(1)(A), 1382c(a)(3)(A). The Act defines "physical or mental impairment" as "an impairment that results from anatomical, physiological, or psychological abnormalities which are demonstrable by medically acceptable clinical and laboratory diagnostic techniques." 42 U.S.C. § § 423(d)(3), 1382(3)(c). A plaintiff must show that his disability, not simply his impairment, has lasted for at least twelve consecutive months.

The Commissioner's regulations require him to apply a five-step sequential evaluation process to each claim for disability benefits: (1) whether the claimant has engaged in substantial gainful activity since filing his claim; (2) whether the claimant has a severe physical and/or mental impairment or combination of impairments; (3) whether the impairment(s) meet or equal an impairment in the listings; (4) whether the impairment(s) prevent the claimant from doing past relevant work; and, (5) whether the claimant is able to perform other work in the national economy given his age, education, and experience. *See* 20 C.F.R. §§ 404.1520, 416.920. Only if the final stage is reached does the fact finder consider the plaintiff's age, education, and work experience in light of his residual functional capacity. *See McCoy v. Schwieker*, 683 F.2d 1138, 1141-42 (8th Cir. 1982); 20 C .F.R. §§ 404.1520, 416.920.

AO72A
(Rev. 8/82)

**Discussion:**

We will first discuss plaintiff's DIB application and the ALJ's determination that plaintiff did not have a severe impairment prior to the expiration of his insured status on December 31, 2001.

In order to have insured status under the Act, an individual is required to have twenty quarters of coverage in each forty-quarter period ending with the first quarter of disability. 42 U.S.C. § 416(i)(3)(B). Plaintiff last met this requirement on December 31, 2001. (Tr. 9D, 15). Accordingly, with regard to plaintiff's DIB application, the overreaching issue in this case is the question of whether plaintiff was disabled during the relevant time period of September 17, 1997, his alleged onset date of disability, through December 31, 2001, the last date he was in insured status under Title II of the Act.

In order for plaintiff to qualify for disability benefits he must prove that, on or before the expiration of his insured status he was unable to engage in substantial gainful activity due to a medically determinable physical or mental impairment which is expected to last for at least twelve months or result in death. *Basinger v. Heckler*, 725 F.2d 1166, 1168 (8th Cir. 1984). The medical evidence of plaintiff's condition subsequent to the expiration of plaintiff's insured status is relevant only to the extent it helps establish plaintiff's condition before the expiration. *Id.* at 1169.

The sequential evaluation process may only be terminated at step two when the impairment or combination of impairments would have no more than a minimal effect on plaintiff's ability to work. *Nguyen v. Chater,* 75 F.3d 429, 431 (8th Cir.1996)*, citing Henderson v. Sullivan,* 930 F.2d 19, 21 (8th Cir.1991)

The procedure of terminating the process at step two has been upheld by the United States Supreme Court in *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In *Brown v. Bowen,* 827 F.2d 311 (8th Cir.1987), the United States Court of Appeals for the Eighth Circuit discussed the impact of *Yuckert* and noted:

> On June 8, 1987, the Supreme Court held that the second step of the sequential evaluation process was not per se invalid. See *Bowen v. Yuckert,* 482 U.S. 137, 107 S.Ct. 2287, 96 L.Ed.2d 119 (1987). In regard to the application of that standard, however, a majority of the Court adopted a standard which provides that '[o]nly those claimants with slight abnormalities that do not significantly limit any "basic work activity" can be denied benefits without undertaking' the subsequent steps of the sequential evaluation process. *Id.* 482 U.S. at 158, 107 S.Ct. at 2299.

*Brown v. Bowen,* 827 F.2d at 312.

Alleged impairments may not be considered severe when they are stabilized by treatment and otherwise are generally unsupported by medical record. *Johnston v. Apfel,* 210 F.3d 870, 875 (8th Cir.2000); see also *Mittlestedt v. Apfel,* 204 F.3d 847, 852 (8th Cir.2000) (plaintiff bears the burden to establish severe impairments at step-two of the sequential evaluation). Thus, plaintiff did have the burden of showing a severe impairment that significantly limited his physical or mental ability to perform basic work activities, but the burden of a plaintiff at this stage of the analysis is not great. *Caviness v. Massanari,* 250 F.3d 603, 605 (8th Cir.2001).

After reviewing the entire record, we find substantial evidence to support the ALJ's determination that plaintiff did not have a severe impairment prior to or on December 31, 2001. The medical evidence shows that on September 17, 1997, plaintiff was admitted into the Navapache Regional Medical Center after experiencing left-sided weakness and a left-sided facial droop. Treatment notes indicate plaintiff had been on a drinking binge and began experiencing problems over the course of a thirty-six hour period of time. Dr. Coss noted by the

second day in the hospital plaintiff was ambulatory without a walker, had no facial droop or slurred speech and had rapid response to questioning. Plaintiff was noted to lift slightly to the left when walking. Plaintiff was discharged on September 20, 1997, with a diagnoses of right temporoparietal CVA versus reversible ischemic neurologic deficit, renal insufficiency of unknown etiology, possible acute prostatitis and alcohol abuse. Plaintiff was instructed to refrain from heavy exertion or heat exposure but encouraged to exercise. Plaintiff was instructed to return for a follow-up in one week.

There is no indication that plaintiff sought any further medical care until plaintiff was admitted into Saint Mary's Hospital on July 22, 1999, after experiencing a seizure or syncope episode. Plaintiff experienced some cardiac dysrhythmia while in the hospital but this stabilized and he was discharged on July 25, 1999, on Dilantin. Plaintiff was advised to refrain from driving and smoking. Plaintiff was instructed to take one aspirin a day and was to call if he had another syncopal or near syncopal episode. Plaintiff was also continued on Levaquin for a urinary tract infection. There is no indication that plaintiff sought any treatment until October 2003 for problems associated with his kidneys and kidney stones. All medical evidence after 2003, fails to mention any on-going problems that plaintiff was experiencing related to his diagnosis of CVA in 1997 or his syncope episode in 1999. There is no indication that plaintiff was continued on seizure medication or that he has experienced seizure activity at any time after July of 1999.

There is also evidence establishing that plaintiff continued to work as a mason until sometime in October of 2003. (Tr. 42, 45, 321, 378).

We believe the foregoing constitutes substantial evidence to support the ALJ's decision that plaintiff's alleged impairments did not significantly limit his ability to perform any "'basic

12

work activity'" prior to December 31, 2001, plaintiff's date last insured. *See Bowen*, 482 U.S. at 158.

We will now address the ALJ's determination with regard to plaintiff's application for SSI dated November 17, 2003.[1] As mentioned above the ALJ determined plaintiff did have severe renal calculi with chronic renal insufficiency at least as of November 17, 2003, but that plaintiff was not disabled as he obtained the RFC to perform medium work.

The ALJ was required to consider all the evidence relating to plaintiff's subjective complaints including evidence presented by third parties that relates to: (1) plaintiff's daily activities; (2) the duration, frequency, and intensity of her pain; (3) precipitating and aggravating factors; (4) dosage, effectiveness, and side effects of his medication; and (5) functional restrictions. *See Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984). While an ALJ may not discount a claimant's subjective complaints solely because the medical evidence fails to support them, an ALJ may discount those complaints where inconsistencies appear in the record as a whole. *Id*. As the United States Court of Appeals for the Eighth Circuit recently observed, "Our touchstone is that [a claimant's] credibility is primarily a matter for the ALJ to decide." *Edwards v. Barnhart,* 314 F.3d 964, 966 (8th Cir. 2003).

After reviewing the record, we believe that the ALJ adequately evaluated the factors set forth in *Polaski*, and conclude there is substantial evidence supporting his determination that plaintiff's complaints were not fully credible. The testimony presented at the hearing as well as

---

[1] To be eligible for Title XVI benefits, plaintiff must show that he was disabled between November 17, 2003, the date he protectively filed his application, and March 7, 2006, the date of the ALJ's decision. *See* 20 C.F.R. § 416.335(2006).

13

the medical evidence contained in the record are inconsistent with plaintiff's allegations of disability.

Plaintiff alleges he is unable to work due to pain associated with his recurrent renal calculi and chronic renal insufficiency. A review of the medical evidence reveals plaintiff has undergone the surgical removal of stones and repair to plaintiff's kidneys in December of 2003, and February of 2004. After each procedure plaintiff was noted to have good energy and to be doing well. In June of 2004, plaintiff reported he was asymptomatic and doing well. Plaintiff reported to Dr. Kumar in June of 2005 that he was doing well and taking Tylenol for pain. In June of 2005, Dr. Kumar noted plaintiff's renal function had remained stable and that plaintiff was asymptomatic and should return for a follow-up appointment in six months. Based on all the medical evidence of record, we find substantial evidence to support that ALJ's determination that plaintiff does not have a disabling kidney impairment.

Plaintiff testified that he continues to have numbness and weakness on his left side. (Tr. 381). However, a review of the evidence fails to reveal any treatment or complaints of left-sided weakness or numbness. *See Novotny v. Chater*, 72 F.3d 669, 671 (8th Cir. 1995) (per curiam) (failure to seek treatment inconsistent with allegations of pain).

Plaintiff testified that he was in chronic pain and had to take prescription pain medication at least twice a week but later testified that he had not taken prescription pain medication in a while. The ALJ properly pointed out that prescription records do not support plaintiff indication that he took prescription pain medication on a frequent and consistent basis. *Haynes v. Shalala*, 26 F.3d 812, 814 (8th Cir. 1994) ( lack of strong pain medication was inconsistent with disabling pain); *Rankin v. Apfel*, 195 F.3d 427, 429 (8th Cir. 1999) (infrequent use of prescription drugs

supports discrediting complaints).  Furthermore, in June of 2005, plaintiff reported he had been taking Tylenol for his pain.

With regard to daily activities, in a Supplemental Interview Outline dated November 26, 2003, plaintiff indicated that he was unable to take care of his personal needs, do any chores, shop and do errands because he was in severe pain. (Tr. 73-74).  Plaintiff also testified that he was unable to use his left foot and hand due to numbness. We find the ALJ properly noted that despite plaintiff's severe pain and inability to use his left hand, plaintiff indicated that he was able to play video games, read and watch television. (Tr. 74).  The ALJ further pointed out that there was nothing in the record to support plaintiff's allegations that he was unable to perform almost any activities of daily living.

Therefore, although it is clear that plaintiff suffers with some degree of pain, he has not established that he is unable to engage in any gainful activity. *See Craig v. Apfel*, 212 F.3d 433, 436 (8th Cir. 2000) (holding that mere fact that working may cause pain or discomfort does not mandate a finding of disability); *Woolf v. Shalala*, 3 F.3d 1210, 1213 (8th Cir. 1993) (holding that, although plaintiff did have degenerative disease of the lumbar spine, the evidence did not support a finding of disabled).  Neither the medical evidence nor the reports concerning his daily activities support plaintiff's contention of total disability.  Accordingly, we conclude that substantial evidence supports the ALJ's conclusion that plaintiff's subjective complaints were not totally credible.

We will next discuss the ALJ's RFC determination.  It is well settled that the ALJ "bears the primary responsibility for assessing a claimant's residual functional capacity based on all relevant evidence." *Roberts v. Apfel*, 222 F.3d 466, 469 (8th Cir. 2000).  RFC is the most a

15

person can do despite that person's limitations. 20 C.F.R. § 416.945(a)(1). A disability claimant has the burden of establishing his or her RFC. *See Masterson v. Barnhart*, 363 F.3d 731, 737 (8th Cir.2004). "The ALJ determines a claimant's RFC based on all relevant evidence in the record, including medical records, observations of treating physicians and others, and the claimant's own descriptions of his or her limitations." *Eichelberger v. Barnhart*, 390 F.3d 584, 591 (8th Cir. 2004); *Guilliam v. Barnhart*, 393 F.3d 798, 801 (8th Cir. 2005). Limitations resulting from symptoms such as pain are also factored into the assessment. 20 C.F.R. § 416.945(a)(3). The United States Court of Appeals for the Eighth Circuit has held that a "claimant's residual functional capacity is a medical question." *Lauer v. Apfel,* 245 F.3d 700, 704 (8th Cir. 2001). Therefore, an ALJ's determination concerning a claimant's RFC must be supported by medical evidence that addresses the claimant's ability to function in the workplace." *Lewis v. Barnhart,* 353 F.3d 642, 646 (8th Cir. 2003).

In finding plaintiff able to perform a significant range of medium work, the ALJ considered plaintiff's subjective complaints, the medical records of his treating physicians, and the evaluation of a non-examining consultant. Plaintiff's capacity to perform this level of work is supported by the fact that plaintiff's examining physicians placed no restrictions on his activities during the relevant time period that would preclude performing medium work. *See Hutton v. Apfel*, 175 F.3d 651, 655 (8th Cir. 1999) (lack of physician-imposed restrictions militates against a finding of total disability). Based on all of the evidence contained in the file, we find substantial evidence supporting the ALJ's RFC determination

Finally, we look to the ALJ's determination that plaintiff could perform substantial gainful employment within the national economy. If an ALJ finds, and the record supports the

16

finding, that a claimant can perform the full range of activities in a work category, the ALJ may refer to the Grids found in 20 C.F.R. Part 404, Subpart P, Appendix 2 in making the ultimate conclusion of disability or non-disability. *See Harris v. Shalala*, 45 F.3d 1190, 1194 (8th Cir. 1995). Given our finding that substantial evidence supports the ALJ's determination that plaintiff is capable of the full range of medium work, we believe the ALJ properly relied on the Grids, eliminating the need for expert vocational testimony, in concluding that given plaintiff's age, education, work experience, and capacity for light work, plaintiff was not disabled.

**Conclusion:**

Based on the foregoing, we recommend, affirming the ALJ's decision, and dismissing plaintiff's case with prejudice. **The parties have ten days from receipt of our report and recommendation in which to file written objections pursuant to 28 U.S.C. § 636(b)(1). The failure to file timely objections may result in waiver of the right to appeal questions of fact. The parties are reminded that objections must be both timely and specific to trigger de novo review by the district court.**

DATED this 13th day of November 2007.

/s/ *J. Marschewski*
HON. JAMES R. MARSCHEWSKI
UNITED STATES MAGISTRATE JUDGE